**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF MICHIGAN**
**SOUTHERN DIVISION**

**BRENDAL ODOM**

              **Plaintiff,**                  **CIVIL ACTION NO. 05-CV-71612-DT**

      **vs.**                             **DISTRICT JUDGE GERALD E. ROSEN**

**COMMISSIONER OF**                **MAGISTRATE JUDGE MONA K. MAJZOUB**
**SOCIAL SECURITY,**

              **Defendant.**
_____/

## REPORT AND RECOMMENDATION

This Court recommends that Plaintiff's Motion for Summary Judgment be **DENIED** and

Defendant's Motion for Summary Judgment be **GRANTED**.

## PROCEDURAL HISTORY

This is an action for judicial review of the final decision by the Commissioner of Social

Security that the Plaintiff was not "disabled" for purposes of the Social Security Act. 42 U.S.C. §§

423, 1382. The issue for review is whether the Commissioner's decision is supported by substantial

evidence on the record.

Plaintiff Brendal Odom filed an application for Disability insurance benefits ("DIB") on

October 17, 2002. (Tr. 37). Plaintiff's application was initially denied on November 26, 2002. (Tr.

21). Plaintiff sought review by an ALJ, and was given an administrative hearing before ALJ

Douglas N. Jones on October 5, 2004. (Tr. 220). The ALJ denied Plaintiff's claims in a written

opinion issued November 23, 2004. (Tr. 10-20). The Appeals Council denied Plaintiff's request

for review on February 23, 2005. (Tr. 4). The ALJ's written opinion is now the final opinion of the

Commissioner.  *See* 20 C.F.R. § 404.981.  Plaintiff appealed the denial of his claims to this Court, and both parties have filed motions for Summary Judgment.

## **MEDICAL HISTORY**

Plaintiff was born on March 9, 1957.  (Tr. 37).  Hugo M. Lopez Negrete, M.D. evaluated Plaintff on March 13, 1997.  (Tr. 182).  At that time, Plaintiff complained of lower back pain with radiating pain and numbness in his left leg.  *Id.*  An MRI of Plaintiff's pain showed a displaced lumbosacral disc and left-sided radiculopathy at S1.  *Id.*  Dr. Negrete recommended a lumbar laminectomy.  *Id.*  Plaintiff underwent surgery on March 19, 1997.  (Tr. 175).  Thereafter, Plaintiff returned to work.  (Tr. 239).  On August 23, 2001 Plaintiff complained of severe back pain with radiating pain across the his lower abdomen and in both legs to J. Tharippeal, M.D., a family physician.  (Tr. 142).  Dr. Tharippeal concluded that Plaintiff had suffered a lumbar muscle strain, and sought further examination to rule out another herniated lumbar disc.  *Id.*  An MRI taken on September 10, 2001 showed a moderate to large herniated disc at the L5-S1 level with borderline spinal stenosis and significant mass effect on the left S1 nerve root.  (Tr. 139).  An EMG of Plaintiff's spine taken on October 3, 2001 showed mild left-side denervation at the L5-S1 level.  (Tr. 136).

During an examination performed by Dr. Lopez Negrete on November 19, 2001 Plaintiff was able to move easily on and off the examining table, walk on his toes and heels, and squat without pain or discomfort.  (Tr. 164).  He displayed a full range of lumbar motion.  *Id.*  He complained of sciatic pain during a straight leg raising test, and strumming the sciatic nerve on the left hand side produced sciatic pain.  *Id.*  Dr. Lopez Negrete performed a second lumbar laminectomy on December 7, 2001.  (Tr. 164).  Plaintiff continued to complain of pain and discomfort in his back

-2-

following the surgery, but on February 25, 2002 Dr. Lopez Negrete opined that Plaintiff should be able to return to work without restriction by March 7, 2002. (Tr. 160). On March 11, 2002 Dr. Lopez Negrete noted that Plaintiff had begun to complain of pain between his shoulder blades, but that he was "very comfortable as far as his lower back is concerned." (Tr. 158).

Plaintiff complained of neck and shoulder pain again to A. Arif, M.D. on May 7, 2002. Dr. Arif noted that Plaintiff was having radicular symptoms secondary to cervical disc disease, and advised Plaintiff to continue physical therapy. (Tr. 120). Plaintiff complained of severe neck and shoulder pain to Dr. Arif again on July 8, 2002 but stated that his lower back symptoms had become much less severe. (Tr. 118).

Plaintiff complained of severe pain in his left shoulder, left arm, and left leg to Dr. Arif on September 19, 2002. (Tr. 155). A lumbar MRI taken on September 29, 2002 revealed that the disc problems in Plaintiff's lumbar spine had resolved. (Tr. 154). On October 14, 2002 Dr. Lopez Negrete wrote a letter indicating that he had no further reason to treat Plaintiff because his lumbar problem had apparently resolved. (Tr. 153). An MRI of Plaintiff's cervical spine taken on February 14, 2002 showed degenerative changes in the cervical spine, including a herniated disc at C4-5 that touched Plaintiff's spinal cord. (Tr. 126). The MRI also revealed bilateral spinal stenosis at the C5-6 and C6-7 levels. *Id.*

After he received the MRI film, Dr. Lopez-Negrete examined Plaintiff's neck and upper spine  on March 11, 2002. (Tr. 158). Dr. Lopez-Negrete opined that the film showed evidence of cervical spondylosis and very mild spinal stenosis. (Tr. 159). He recommended a short course of physical therapy and non-steroidal anti-inflammatory pain medication. *Id.*

-3-

Plaintiff continued to complain of back, arm, and neck pain.   An EMG of Plaintiff's arms taken on July 29, 2002 was within normal limits.  (Tr. 156).  An MRI of Plaintiff's lumbar spine taken on September 29, 2002 showed that Plaintiff's lumbar nerve roots were well preserved.  (Tr. 154).

B.D. Choi, M.D. performed a physical residual functional capacity assessment of Plaintiff on November 25, 2002.  (Tr. 167-174).  He opined that Plaintiff was able to lift up to ten pounds frequently and twenty pounds on occasion, could sit or stand for up to six hours in an eight hour day, and had no postural limitations.  (Tr. 168).

Plaintiff complained of back pain to Dr. Arif on December 8, 2002, but Plaintiff's back was normal on examination except for his post-surgical scar.  (Tr. 202).  Plaintiff continued to complain of back pain to Dr. Arif during several examinations in 2003 and 2004.  (Tr. 190-196).

On October 6, 2004, one day after Plaintiff's administrative hearing, Dr. Arif responded to a questionnaire sent by Plaintiff's attorney.  Dr. Arif checked boxes indicating that he considered Plaintiff's complaints of pain to be credible, and that Plaintiff had displayed a reduced range of motion, "abnormal gate" [sic], muscle spasms, and positive straight leg raising tests. (Tr. 186).  Dr. Arif's one or two word answers to other questions in the questionnaire indicated that he considered Plaintiff's hearing testimony consistent with his findings, and that Plaintiff needed to take unscheduled breaks to complete an eight hour workday.  (Tr. 187).

**<u>HEARING TESTIMONY</u>**

At the administrative hearing, Plaintiff testified that, while he was sometimes able to do chores and basic housework, his back pain made it difficult for him to stand for three or four

-4-

days out of every week.  (Tr. 242).  He also estimated that he could lift up to ten pounds, sit or stand for fifteen minutes, and walk up to one and a half blocks when using a cane.  (Tr. 244-49).

Mary Williams, a vocational expert, also testified at the hearing.  (Tr. 249).  The vocational expert was asked to testify about the availability of jobs for a person of Plaintiff's age, experience, and educational background who could perform light work that involved no crawling, climbing of ladders, or use of vibrating tools, and only occasional bending at the waist or knees, twisting of the torso, kneeling, climbing of stairs, exposure to unprotected heights, exposure to moving machinery.  (Tr. 250).  She testified that while such a person could not perform any of Plaintiff's past work, but would be able to perform a variety of other jobs in the economy.  (Tr. 251).

## STANDARD OF REVIEW

Title 42 U.S.C. § 405(g) gives this Court jurisdiction to review the Commissioner's decisions.  Judicial review of those decisions is limited to determining whether her findings are supported by substantial evidence and whether she employed the proper legal standards.  *Richardson v. Perales*, 402 U.S. 389, 401 (1971); *Walters v. Comm'r*, 127 F.3d 525, 528 (6th Cir. 1997).  Substantial evidence is more than a scintilla but less than a preponderance; it is "'such relevant evidence as a reasonable mind might accept as adequate to support a conclusion.'"  *Richardson,* 402 U.S. at 401 (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197 (1938)).  It is not the function of this court to   try cases *de novo*, resolve conflicts in the evidence, or decide questions of credibility.  *See Brainard v. Sec'y of Health and Human Servs.*, 889 F.2d 679, 681 (6th Cir. 1989).

In determining whether substantial evidence supports the Commissioner's decision, the Court must examine the administrative record as a whole.  *Kirk v. Sec'y of Health and Human Servs.*, 667

F.2d 524, 536 (6th Cir. 1981), *cert. denied*, 461 U.S. 957 (1983).  If the Commissioner's decision is supported by substantial evidence, it must be affirmed, even where substantial evidence also supports the opposite conclusion and the reviewing court would decide the matter differently.  *Her v. Comm'r*, 203 F.3d 388, 389-90 (6th Cir. 1999).

## DISCUSSION AND ANALYSIS

The Plaintiff's Social Security disability determination was made in accordance with a five step sequential analysis.  In the first four steps, Plaintiff had to show that:

(1)     he was not presently engaged in substantial gainful employment; and

(2)     he suffered from a severe impairment; and

(3)     the impairment met or was medically equal to a "listed impairment;" or

(4)     he did not have the residual functional capacity (RFC) to perform his relevant past work.

*See* 20 C.F.R. § 404.1520(a)-(e); 20 C.F.R.. § 416.920(a)-(e). If Plaintiff's impairments prevented him from doing his past work, the Commissioner would, at step five, consider his RFC, age, education and past work experience to determine if he could perform other work.  If he could not, he would be deemed disabled.  20 C.F.R. § 404.1520(f).  The Commissioner has the burden of proof only on "the fifth step, proving that there is work available in the economy that the claimant can perform."  *Her*, 203 F.3d at 391.  To meet this burden, the Commissioner must make a finding "supported by substantial evidence that [the claimant] has the vocational qualifications to perform specific jobs."  *Varley v. Sec'y of Health and Human Servs.*, 820 F.2d 777, 779 (6th Cir. 1987).  This "substantial evidence" may be in the form of vocational expert testimony in response to a hypothetical question, "but only 'if the question accurately portrays [the claimant's] individual physical and mental impairments.'"  *Id.* (citations omitted).

-6-

In this case, the ALJ concluded that Plaintiff retained the functional capacity to perform unskilled light work. The ALJ concluded at step five that Plaintiff was not disabled because he retains the functional capacity to perform some work in the regional economy.

Plaintiff argues that the ALJ failed to give proper deference to statements by Dr. Arif that Plaintiff's complaints of pain were entirely credible, and that he needed to take unscheduled breaks during the workday. The "treating physician rule" requires that an ALJ give complete deference to the well supported statements of treating physicans that are consistent with other substantial evidence of record. *Bogle v. Sullivan*, 998 F.2d 342, 347-48 (6ᵗʰ Cir. 1993). However, an ALJ may reasonably discount the opinions or statements of a treating physician when those statements are unsupported by objective evidence or conflict with other objective evidence on the record. *McCoy o/b/o/ McCoy v. Chater*, 81 F.3d 44, 47 (6ᵗʰ Cir. 1995). As the ALJ noted, Dr. Arif's statements are not supported by his objective clinical findings. Dr. Arif's voluminous treatment notes fail to suggest that Plaintiff occasionally needs to stop all activity to deal with his pain. More importantly, Dr. Lopez-Negrete repeatedly noted that Plaintiff's complaints of lower back pain were not well explained by clinical findings or medical images of his lower back. Substantial evidence supported the ALJ's decision to give greater weight to Dr. Lopez-Negrete's opinions.

Plaintiff next argues that the ALJ improperly discounted his allegations of pain. 20 C.F.R. § 404.1529 and Social Security Ruling 96-7p govern an ALJ's credibility determination. They require that the ALJ consider a variety of factors in reaching a credibility determination, including the state of the medical evidence, treatment history, medication history, Plaintiff's daily activities, and any inconsistencies in Plaintiff's own testimony. Plaintiff testified that his back pain was so severe that he spent three to four days a week doing nothing but lying down. The ALJ concluded

that the record supported a finding that, while Plaintiff suffered some symptoms of severe lumbar pain, Plaintiff's testimony concerning the severity of these symptoms was not wholly credible. (Tr. 17).   The ALJ noted that objective clinical tests and medical images frequently indicated only moderate dysfunction in Plaintiff's back.   He also noted that Plaintiff's treatment had not been aggressive since Plaintiff's second back surgery.  As a general matter, multiple surgical intervention must usually be considered "aggressive treatment."   Here, however, Plaintiff's doctors appear to have recommended only a short course of physical therapy and prescribed anti-inflammatory painkilling medications for Plaintiff's back.   Given several statements in the record that Plaintiff's lumbar problems appeared to have largely resolved, substantial evidence supports the ALJ's conclusion that Plaintiff's allegations of disabling pain were not entirely credible.

The ALJ's conclusion that Plaintiff was not disabled is supported by substantial evidence on the record.

## RECOMMENDATION

The Commissioner's decision is supported by substantial evidence.  Plaintiff's Motion for Summary Judgment should be **DENIED**, and. Defendant's Motion for Summary Judgment should be **GRANTED**.

Either party to this action may object to and seek review of this Report and Recommendation, but must act within ten (10) days of service of a copy hereof as provided for in 28 U.S.C. § 636(b)(1) and E.D. Mich. LR 72.1(d)(2).  Failure to file specific objections constitutes a waiver of any further right of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985); *Howard v. Sec'y of Health and Human Servs.*, 932 F.2d 505 (6th Cir. 1991); *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  Filing objections which raise some issues but fail to raise others with specificity will not

preserve all objections that party might have to this Report and Recommendation. *Willis v. Secretary*, 931 F.2d 390, 401 (6th Cir. 1991); *Smith v. Detroit Fed'n of Teachers Local 231*, 829 F.2d 1370, 1373 (6th Cir. 1987). Pursuant to Rule 72.1(d)(2) of the *Local Rules of the United States District Court for the Eastern District of Michigan*, a copy of any objection must be served upon this Magistrate Judge.

Within ten (10) days of service of any objecting party's timely filed objections, the opposing party may file a response. The response shall be not more than five (5) pages in length unless by motion and order such page limit is extended by the Court. The response shall address specifically, and in the same order raised, each issue contained within the objections.

Dated: May 11, 2006                            s/ Mona K. Majzoub
                                               MONA K. MAJZOUB
                                               UNITED STATES MAGISTRATE JUDGE

## Proof of Service

I hereby certify that a copy of this Report and Recommendation was served upon Counsel of Record on this date.

Dated: May 11, 2006                            s/ Lisa C. Bartlett
                                               Courtroom Deputy

-9-